JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
*See Attachment*

## DEFENDANTS
*See Attachment*

3 0 4   7 V   2 1 6 9 R

(b) County of Residence of First Listed Plaintiff *Dallas*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
*See Attachment*

Attorneys (If Known)

RECEIVED
OCT - 6 2004
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [x] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | [ ] 423 Withdrawal | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 820 Copyrights | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 830 Patent | [ ] 810 Selective Service |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | [ ] 840 Trademark | [ ] 850 Securities/Commodities/ |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | Exchange |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | | [ ] 875 Customer Challenge |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [x] 893 Environmental Matters |
| | | | | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | & Disclosure Act | | Information Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | Habeas Corpus: | | [ ] 870 Taxes (U.S. Plaintiff | Determination |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | or Defendant) | Under Equal Access to |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party | Justice |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. | 26 USC 7609 | [ ] 950 Constitutionality of |
| | | [ ] 550 Civil Rights | Security Act | | State Statutes |
| | | [ ] 555 Prison Condition | | | [ ] 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C. sec. 7604 - Action to compel performance of non-discretionary duties under Clean Air Act for the Dallas Fort Worth area to: 1) determine attainment status; and 2) act on submitted state implementation plan.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE *October 1, 2004*

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## ATTACHMENT TO CIVIL COVER SHEET
## BLUE SKIES ALLIANCE, ET AL, V. LEAVITT, ET AL.

### I.(a)  PARTIES

Plaintiffs:
BLUE SKIES ALLIANCE

DOWNWINDERS AT RISK

PUBLIC CITIZEN

SIERRA CLUB

Defendants:
LEAVITT, MICHAEL O., Administrator, US Environmental Protection Agency

GREENE, RICHARD E., Regional Administrator, US Environmental Protection Agency, Region XI

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

### I.(c)  ATTORNEYS

For Plaintiffs:
Marc Chytilo
LAW OFFICE OF MARC CHYTILO
1505 Mission Canyon Road
Santa Barbara, California  93105
Telephone:  (805) 682-0585

Susan Hays
LAW OFFICE OF SUSAN HAYS
3219 McKinney Avenue, Suite 1500
Dallas, TX 75204
Telephone:  (214) 821-5585

For Defendants:
United States Attorney, Richard Roper
Northern District of Texas
1100 Commerce St., 3rd FL.
Dallas, Texas 75242-1699

Attorney General John Ashcroft
U.S. Department of Justice
10th and Pennsylvania Avenue, NW
Washington, DC 20530-0001

Marc Chytilo (California Bar No. 132742)
LAW OFFICE OF MARC CHYTILO
1505 Mission Canyon Road
Santa Barbara, California 93105
Telephone: (805) 682-0585
Fax: (805) 682-2379

Attorneys for Plaintiffs
BLUE SKIES ALLIANCE, DOWNWINDERS AT RISK,
PUBLIC CITIZEN, and SIERRA CLUB

Susan Hays (Texas Bar No. 24002249)
LAW OFFICE OF SUSAN HAYS
3219 McKinney Avenue, Suite 1500
Dallas, TX 75204
Telephone: (214) 821-5585
Fax: (214) 357-7252

Local Counsel for Plaintiffs
BLUE SKIES ALLIANCE, DOWNWINDERS AT RISK,
PUBLIC CITIZEN, and SIERRA CLUB



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT - 6 2004

CLERK, U.S. DISTRICT COURT
By _____
Deputy

3 C 4 C V   2 1 6 9 R

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BLUE SKIES ALLIANCE, DOWNWINDERS AT RISK, PUBLIC CITIZEN and SIERRA CLUB, non-profit corporations, ) ) ) ) | Civil Action No. |
| Plaintiffs, ) ) ) | **COMPLAINT** |
| vs. ) ) | |
| MICHAEL O. LEAVITT, Administrator, US Environmental Protection Agency; RICHARD E. GREENE, Regional Administrator, US Environmental Protection Agency, Region VI, and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ) ) ) ) ) ) ) ) | |
| Defendants. ) ) ) | |

1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

(federal question), 1361 (mandamus), 2201 (declaratory relief), 2202 (other relief) and 42

U.S.C. § 7604(a)(2) (action arising under the Clean Air Act).

2.      On December 17, 2003, Plaintiffs BLUE SKIES ALLIANCE,

DOWNWINDERS AT RISK, PUBLIC CITIZEN and SIERRA CLUB served by certified mail

Defendants MICHAEL LEAVITT, RICHARD GREENE and THE U.S. ENVIRONMENTAL

PROTECTION AGENCY (EPA) with notice of the matters complained of herein and their

intent to file suit thereon in the form and manner required pursuant to 42 U.S.C. § 7604(b).

More than sixty days have elapsed since notice was served and the violations complained of are

continuing.

## VENUE

3.      Venue lies in the Northern District of Texas pursuant to 28 U.S.C. § 1391(e)

since Plaintiffs each represent members that reside in the Dallas-Fort Worth (DFW)

metropolitan area and since Defendant EPA's regional office is located in Dallas in the state of

Texas.

## NATURE OF ACTION

4.      This is an action brought under the "Citizens' Suit" provisions of the Clean Air

Act (CAA or Act) to compel the Administrator of the United States Environmental Protection

Agency (Administrator) to take several non-discretionary actions mandated by the Act.

Plaintiffs first seek to compel the Administrator to make a determination whether the DFW

nonattainment area failed to achieve the one hour national ambient air quality standard for

ozone by DFW's statutory attainment date of November 15, 1999.  The Clean Air Act requires

the Administrator to make his finding whether an area has met an attainment date no later than

six (6) months after that deadline, or for the DFW area, by May 15, 2000. 42 U.S.C. § 7509(c).

The state of Texas has supplied EPA with ambient air quality data establishing that the DFW

nonattainment area did not attain the one hour ozone standard by the deadline, and thus EPA

has a non-discretionary duty to promptly make a finding that the DFW nonattainment area

failed to attain the 1-hour ozone standard. As an automatic consequence, the DFW area must

be reclassified by operation of law to a higher classification. 42 U.S.C. § 7511(b)(2). Plaintiffs

also seek to compel the Administrator to take final action on two mandatory state

implementation plan (SIP) revisions for the DFW nonattainment area. The Act requires prompt

EPA action approving or disapproving SIP submittals from states. 42 U.S.C. § 7410(k)(2).

The state of Texas submitted two SIP revisions addressing the 1-hour ozone standard to EPA

on October 25, 1999 and April 25, 2000. EPA found these two SIP submittals "complete" on

December 16, 1999 and June 23, 2000, 66 Fed. Reg. 4767 (Jan. 18, 2001), starting a 12 month

clock for final EPA action. To date, the Administrator has not taken final action on either of

these DFW SIPs. The Administrator has ignored his non-discretionary duty under the CAA to

act upon a submitted SIP no later than 12 months after EPA determines completeness, or for

the DFW area, by December 16, 2000 for the "Rate of Progress" SIP and by June 23, 2001 for

the "attainment demonstration" SIP. See 42 U.S.C. § 7410(k)(2) and 66 Fed. Reg. 4767, *supra*.

Defendants' failure to comply with their non-discretionary mandatory duties has deprived the

people of Texas, including Plaintiffs and their members, of clean and healthy air.

<u>PARTIES</u>

5.     Plaintiff BLUE SKIES ALLIANCE, a Texas non-profit corporation with

principal offices in Dallas County, is dedicated to protecting and enhancing Texas' air quality.

BLUE SKIES ALLIANCE is working to promote public health and welfare by achieving clean air in the DFW region and elsewhere.

6.      BLUE SKIES ALLIANCE has members, supporters and directors who live, work, and recreate in the Dallas-Fort Worth region and throughout the state of Texas.  BLUE SKIES ALLIANCE's members, supporters and directors are adversely affected by having to breathe unhealthful air.  BLUE SKIES ALLIANCE's members, supporters and directors, and their children, experience asthma and/or other respiratory ailments whose severity is exacerbated during periods of excessive air pollution.  BLUE SKIES ALLIANCE's members, supporters and directors, and their children alter their daily routines during periods of excessive air pollution, including reduced physical exercise and recreation, additional and prolonged periods of time indoors, and increased frequency of school absenteeism and missed work days for individuals that are themselves injured or who care for other persons that are injured by the excessive air pollution.

7.      Defendants' failure to take timely final action determining whether the DFW area attained the one hour ozone standard in 1999 interfered with the Act's program of: a) promptly reclassifying areas that fail to meet attainment milestones; and b) mandating the submittal of more rigorous enhanced SIPs within 12 months of the finding of failure to attain.  As a result, Plaintiffs, and their members, supporters and directors, have been exposed to prolonged and/or repeated and unnecessary periods of unhealthful air quality.  In addition, EPA's failure to timely act on the 2000 DFW SIP submittal jeopardizes the iterative and on-going SIP planning and revision process that is necessary to accomplish meaningful air quality improvement and attainment as expeditiously as practicable.  Therefore, the above-described health, recreational, and economic interests of BLUE SKIES ALLIANCE and their respective

4

members, supporters and directors have been and will continue to be adversely affected and irreparably injured by the Administrator's delay in compliance with the CAA.

8.      Plaintiff DOWNWINDERS AT RISK, a Texas non-profit corporation with principal offices in Dallas County, is dedicated to protecting and enhancing Texas' air quality. DOWNWINDERS AT RISK is working to promote public health and welfare by achieving clean air in the DFW region and elsewhere.

9.      DOWNWINDERS AT RISK has members, supporters and directors who live, work, and recreate in the Dallas-Fort Worth region and throughout the state of Texas. DOWNWINDERS AT RISK's members, supporters and directors are adversely affected by having to breathe unhealthful air. DOWNWINDERS AT RISK's members, supporters and directors, and their children, experience asthma and/or other respiratory ailments whose severity is exacerbated during periods of excessive air pollution. DOWNWINDERS AT RISK's members, supporters and directors, and their children alter their daily routines during periods of excessive air pollution, including reduced physical exercise and recreation, additional and prolonged periods of time indoors, and increased frequency of school absenteeism and missed work days for individuals that are themselves injured or who care for other persons that are injured by the excessive air pollution.

10.     Defendants' failure to take timely final action determining whether the DFW area attained the one hour ozone standard in 1999 interfered with the Act's program of: a) promptly reclassifying areas that fail to meet attainment milestones; and b) mandating the submittal of more rigorous enhanced SIPs within 12 months of the finding of failure to attain. As a result, Plaintiffs, and their members, supporters and directors, have been exposed to prolonged and/or repeated and unnecessary periods of unhealthful air quality. In addition,

5

EPA's failure to timely act on the 2000 DFW SIP submittal jeopardizes the iterative and on-going SIP planning and revision process that is necessary to accomplish meaningful air quality improvement and attainment as expeditiously as practicable. Therefore, the above-described health, recreational, and economic interests of DOWNWINDERS AT RISK and their respective members, supporters and directors have been and will continue to be adversely affected and irreparably injured by the Administrator's delay in compliance with the CAA.

11.     Plaintiff PUBLIC CITIZEN, non-profit corporation incorporated in Washington D.C. and with offices in Austin, Texas, with approximately 160,000 members nationwide, is dedicated to protecting and enhancing Texas' air quality. PUBLIC CITIZEN is working to promote public health and welfare by achieving clean air in the DFW region and elsewhere.

12.     PUBLIC CITIZEN has members who live, work, and recreate in the Dallas-Fort Worth region and throughout the state of Texas. PUBLIC CITIZEN's members are adversely affected by having to breathe unhealthful air. PUBLIC CITIZEN's members, and their children, experience asthma and/or other respiratory ailments whose severity is exacerbated during periods of excessive air pollution. PUBLIC CITIZEN's Texas members, and their children alter their daily routines during periods of excessive air pollution, such as engaging in reduced physical exercise and recreation, spending additional and prolonged periods of time indoors, and observing increased frequency of school absenteeism and missed work days for individuals that are themselves injured or who care for other persons that are injured by the excessive air pollution.

13.     Defendants' failure to take timely final action determining whether the DFW area attained the one hour ozone standard in 1999 interfered with the Act's program of: a) promptly reclassifying areas that fail to meet attainment milestones; and b) mandating the

submittal of more rigorous enhanced SIPs within 12 months of the finding of failure to attain. As a result, Plaintiffs, and their members, supporters and directors, have been exposed to prolonged and/or repeated and unnecessary periods of unhealthful air quality. In addition, EPA's failure to timely act on the 2000 DFW SIP submittal jeopardizes the iterative and on-going SIP planning and revision process that is necessary to accomplish meaningful air quality improvement and attainment as expeditiously as practicable. Therefore, the above-described health, recreational, and economic interests of PUBLIC CITIZEN and their respective members have been and will continue to be adversely affected and irreparably injured by the Administrator's delay in compliance with the CAA.

14. Plaintiff SIERRA CLUB, a public benefit, non-profit corporation incorporated in California and with offices in Austin, Texas, is dedicated to protecting and enhancing Texas' air quality. SIERRA CLUB is working to promote public health and welfare by achieving clean air in the DFW region and elsewhere.

15. SIERRA CLUB has members, supporters and directors who live, work, and recreate in the Dallas-Fort Worth region and throughout the state of Texas. SIERRA CLUB's members, supporters and directors are adversely affected by having to breathe unhealthful air. SIERRA CLUB's members, supporters and directors, and their children, experience asthma and/or other respiratory ailments whose severity is exacerbated during periods of excessive air pollution. SIERRA CLUB's members, supporters and directors, and their children alter their daily routines during periods of excessive air pollution, such as reduced physical exercise and recreation, additional and prolonged periods of time indoors, and increased frequency of school absenteeism and missed work days for individuals that are themselves injured or who care for other persons that are injured by the excessive air pollution. SIERRA CLUB conducts various

7

outdoor activities and programs for their members and members of the public that cause increased exposure, and thus increased physical harm, during periods of excessive air pollution. SIERRA CLUB conducts outdoor experience programs for children from urban areas throughout the Country, including Dallas-Fort Worth. Children are generally more susceptible to injury from exposure to air pollution, and the children that participate in Plaintiff SIERRA CLUB's outdoor programs are particularly harmed by excessive air pollution in the DFW nonattainment area and, as a result of unhealthful air pollution from Defendants' inaction, are unable to fully enjoy the outdoor experience and gain a complete appreciation for nature and the outdoor world.

16.     Defendants' failure to take timely final action determining whether the DFW area attained the one hour ozone standard in 1999 interfered with the Act's program of: a) promptly reclassifying areas that fail to meet attainment milestones; and b) mandating the submittal of more rigorous enhanced SIPs within 12 months of the finding of failure to attain. As a result, Plaintiffs, and their members, supporters and directors, have been exposed to prolonged and/or repeated and unnecessary periods of unhealthful air quality. In addition, EPA's failure to timely act on the 2000 DFW SIP submittal jeopardizes the iterative and on-going SIP planning and revision process that is necessary to accomplish meaningful air quality improvement and attainment as expeditiously as practicable. Therefore, the above-described health, recreational, and economic interests of SIERRA CLUB and their respective members, supporters and directors have been and will continue to be adversely affected and irreparably injured by the Administrator's delay in compliance with the CAA.

17.     Defendant RICHARD E. GREENE is sued in his official capacity as Regional Administrator, Environmental Protection Agency (EPA), Region VI.

8

18.    Defendant MICHAEL O. LEAVITT is sued in his official capacity as EPA Administrator and as the person with ultimate authority over EPA's findings concerning attainment and the adequacy of Texas' implementation plan.

19.    Defendant ENVIRONMENTAL PROTECTION AGENCY is the federal agency responsible for carrying out various mandates under the Clean Air Act. EPA has been assigned the responsibility to take timely final action on nonattainment areas' attainment status and on air quality plans submitted by local and state authorities. EPA has enforcement duties in the event that local and state authorities fail to submit plans adequate to attain the national ambient air quality standards and otherwise conform with the Act. 42 U.S.C. § 7410.

20.    The Administrator's failure to timely perform the nondiscretionary duties complained of herein illegally delays adoption of measures required by the Act to reduce ozone pollution in the DFW nonattainment area, adversely affects plaintiffs and deprives them of the health, welfare and procedural protections guaranteed to them under the Act. The relief sought herein would redress these injuries.

## CLEAN AIR ACT

21.    In 1970, Congress enacted the CAA to abate air pollution, enhance air quality, and to protect public health and welfare. 42 U.S.C. § 7401(b). Congress directed EPA to clean up our nation's air quality and required EPA to identify those air pollutants which endanger public health and welfare. 42 U.S.C. § 7408(a). National ambient air quality standards (NAAQS) were developed through EPA's regulatory process to establish healthful levels of the air pollutants. 42 U.S.C. § 7409(a). Exposure to ozone for a one hour period at or above the one hour ozone NAAQS causes adverse health impacts to most individuals. Some persons, denoted as members of "sensitive populations" suffer adverse health effects from one hour

exposure to ozone concentrations below the one hour ozone NAAQS. The Act establishes a

comprehensive method for controlling air pollution and improving air quality. Air quality

improvement activities under the Act are a "partnership" between the federal EPA, state air

quality agencies, and local jurisdictions. In order for this partnership to function, each entity

must address its responsibilities in a timely manner.

       22.     Localities and states which exceed the NAAQS for ozone were designated by

EPA as nonattainment areas. 42 U.S.C. § 7502(a). Under the 1990 Amendments to the CAA,

each nonattainment area was subsequently classified by EPA as a "marginal," "moderate,"

"serious," "severe," or "extreme" area based on the severity of the nonattainment problem. 42

U.S.C. § 7511(a)(1).

       23.     To achieve the NAAQS, each state is responsible for adopting and submitting to

EPA a SIP designed to provide for attainment of the NAAQS in each nonattainment area "as

expeditiously as practicable," and no later than a specific statutory deadline correlating to the

severity of the area's air pollution problems. 42 U.S.C. § 7410(a)(1). The state prepares and

submits to EPA an air quality control plan containing measures needed for each nonattainment

area to timely attain NAAQS. Upon EPA's approval, the regional plans become part of the

statewide SIP and the specific measures contained within the SIP become enforceable in

federal court. 42 U.S.C. § 7604(a).

       24.     The 1990 Amendments to the CAA responded to the states' continued inability

to attain the NAAQS by revising the statutory deadlines and instituting a series of procedural

and substantive requirements for nonattainment areas. 42 U.S.C. § 7511(a). To assist the states

and local agencies achieve the ozone standard, Congress required states to prepare SIP

revisions detailing how the one hour ozone standard was going to be timely achieved and submit the plans to EPA. 42 U.S.C. § 7511a(a)-(e).

25.    By November 15, 1992, all nonattainment areas had to submit an inventory of actual emissions. 42 U.S.C. § 7511a(a)(1).  For areas classified as "moderate" or worse, a new inventory based on 1990 actual emissions had to be submitted by November 15, 1993. 42 U.S.C. § 7511a(b)(1).

26.    Areas classified as "moderate" or worse had to submit to EPA a reasonable further progress, also referred to as rate of progress, demonstration by November 15, 1993. 42 U.S.C. § 7511a(b)(1)(A).  Pursuant to this provision, reasonable further progress means achieving a 15% reduction from 1990 baseline ozone emissions by November 15, 1996. 42 U.S.C. § 7511a(b)(1)(A).

27.    By November 15, 1994, SIP revisions for "serious" or worse areas had to demonstrate that (1) the plan would provide for attainment of the ozone standard by the applicable attainment date (attainment demonstration) and (2) the plan would achieve a 3% reduction in emissions of ozone precursors for each year after November 15, 1996 until the attainment date (post-1996 rate-of-progress demonstration). 42 U.S.C. § 7511a(c)(2)(A) & (B).

28.    For "serious" or worse areas, the 1990 CAA Amendments also require that the SIP revisions include an enhanced monitoring program and an enhanced inspection and maintenance (I&M) program. 42 U.S.C. § 7511a(c)(1) & (3).

29.    For "severe" or worse areas, the 1990 CAA Amendments also require that the SIP revisions include more aggressive offset ratios for new and modified major stationary sources, Transportation Control Measures to offset growth in motor vehicle emissions, and a

11

rule imposing a per ton fee for stationary sources in areas that fail to attain the one hour

standard by the November 15, 2005 deadline. 42 U.S.C. § 7511a(d).

30.    Upon a finding that a nonattainment area had failed to attain the standard by the

statutory deadline, the area is reclassified to a higher classification, 42 U.S.C. § 7511(b)(2).

The Act mandates that each reclassified area must adopt and submit a revised SIP adequate to

meet the SIP requirements for the new classification. 42 U.S.C. § U.S.C. § 7511a(i). The

revised SIP must be submitted no later than 12 months following the effective date of the

reclassification. 42 U.S.C. § 7509(d)(1).

31.    Within sixty days but no later than six months after receipt of any SIP revision,

the Administrator shall make a completeness determination. 42 U.S.C. § 7410(k)(1)(B). To be

deemed complete, the SIP revision must satisfy certain minimum criteria establish by EPA. 40

C.F.R. Pt. 51, Appendix V. Alternatively, should the Administrator fail to make a

completeness determination within six months, the submitted SIP revision shall be deemed to

meet the minimum criteria for completeness by operation of law. 42 U.S.C. § 7410(k)(1)(B).

32.    Once EPA makes a determination that a SIP revision is complete or when EPA

fails to act within six months after a SIP revision submittal, EPA shall act upon the submitted

plan within 12 months. 42 U.S.C. § 7410(k)(2).

33.    If the Administrator finds that a SIP revision for any nonattainment area is

substantially inadequate, the Administrator shall require the state and local agencies to correct

the inadequacies. 42 U.S.C. § 7410(k)(5). If the Administrator determines or finds that the

state has failed to submit a complete SIP revision or correct a deficient SIP revision, or

disapproves a SIP revision in whole or in part, he shall impose certain sanctions, such as

prohibiting highway projects and/or increasing the applicable offset requirements. 42 U.S.C. §

7509(b).  Should the Administrator find that the state has failed to make a required SIP

submission or if the SIP revision does not satisfy the minimum criteria for completeness, a

federal implementation plan must be promulgated unless the state corrects the deficiency and

the Administrator approves the revised plan before 24 months has elapsed. 42 U.S.C.

7410(c)(1).


## FIRST CAUSE OF ACTION

**FAILURE TO MAKE NON-DISCRETIONARY FINDINGS THAT THE DFW**

**NONATTAINMENT AREA FAILED TO ATTAIN BY NOVEMBER 15, 1999**

[42 U.S.C. §§ 7509(c)(2); 7511(b)(2)(B)]

34.    Paragraphs 1-33 are incorporated herein by reference.

35.    Each non-attainment area in the Country is assigned a date for attainment of the

health-based one hour ozone NAAQS by the CAA.  42 U.S.C. § 7511(a)(1).  Based on the

then-existing levels of air pollution, the DFW region was classified as a "moderate" non-

attainment area in 1991.  56 Fed. Reg. 56694.  The Act requires that "moderate" non-

attainment areas attain the one hour national ambient air quality standard for ozone no later

than 6 years after enactment, or by November 15, 1996. 42 U.S.C. § 7511.  The DFW

nonattainment area failed to meet the 1996 attainment date, and was reclassified by EPA to

"serious" on March 20, 1998. 63 Fed. Reg. 8128.  The attainment deadline for "serious" ozone

nonattainment areas was November 15, 1999.  42 U.S.C. § 7511 (a)(1).  Texas did not timely

adopt and submit an attainment demonstration SIP and the DFW nonattainment area continued

to experience multiple violations of the one hour ozone NAAQS.

36.     The Act requires the Administrator to determine as expeditiously as practicable after the November 15, 1999 attainment date, but not later than 6 months after that date, whether each "serious" area had attained the ozone NAAQS by the attainment date. 42 U.S.C. §§ 7509(c)(1); 7511(b)(2). At the time of such determination, the Administrator must publish in the Federal Register notice of such determination. 42 U.S.C. §§ 7509(c)(2); 7511(b)(2)(B).

37.     Any "serious" area which the Administrator finds has not attained the ozone NAAQS by the attainment date must be reclassified by operation of law to a higher classification. 42 U.S.C. §§ 7511(a)(1); (b)(2)(A). The Administrator must identify such reclassification in the Federal Register notice.

38.     Thus, not later than May 15, 2000, the Administrator was required to determine whether the DFW nonattainment area had attained the ozone standard as of November 15, 1999, and publish a Federal Register Notice containing such determination. If the determination was that the DFW nonattainment area had not attained the ozone standard as of November 15, 1999, then Federal Register Notice had to also identify the reclassification of the DFW nonattainment area to "severe" "by operation of law." 42 U.S.C. § 7511(b)(2)(A).

39.     The requirements set forth in paragraphs 36-38 above are non-discretionary duties of the Administrator under the Act.

40.     The Administrator has not determined whether the DFW nonattainment area attained the ozone standard by November 15, 1999.

41.     The Administrator has not published a final Federal Register Notice containing his determination of whether the DFW nonattainment area attained the ozone standard by November 15, 1999.

42.    The Administrator has not published a Federal Register Notice identifying the reclassification of the DFW nonattainment area to "severe."

43.    The DFW nonattainment area did not attain the ozone NAAQS by November 15, 1999, and remains in nonattainment. The state of Texas must immediately commence an accelerated planning and implementation process in order for the DFW nonattainment area to meet the next earliest applicable date of November 15, 2005, the attainment of which is based on three prior years of air quality monitoring data. If this SIP revision process is furthered delayed, the DFW nonattainment area may fail to attain the one hour national ambient air quality standard for ozone by that date. In that event, the Act mandates the imposition of fees upon air pollution emitted from major stationary sources above a certain baseline. 42 U.S.C. §§ 7511a(d)(3); 7511d.

44.    For all the foregoing reasons, the Administrator is in violation of her non-discretionary duties as set forth in 42 U.S.C. § 7509(c)(1) and 7511(b)(2). The Administrator's violation of such non-discretionary duties is ongoing. On information and belief, plaintiffs allege that such violation will continue unless enjoined by order of this court.

45.    Plaintiffs and the public are suffering and will suffer irreparable harm because of the Administrator's failure to timely perform his non-discretionary duties. Each day of EPA delay forestalls the schedule for adoption of additional controls and other measures to protect plaintiffs and the public from the serious health impacts of ozone pollution. Each day of EPA delay undermines Congress' specific schedule for additional steps to meet the federal health standard for ozone.

46.    For all of the foregoing reasons, plaintiffs are entitled to an order of this court directing the Administrator to formally and finally determine whether the DFW nonattainment area attained the one hour national ambient air quality standard for ozone as of November 15,

1999, to promptly publish a final Federal Register Notice containing such determination, and to identify in such notice the reclassification of the DFW nonattainment area to "severe" if the determination is (as it must be in light of the facts) that the DFW nonattainment area did not timely attain the standard.

## SECOND CAUSE OF ACTION

## FAILURE TO TAKE NON-DISCRETIONARY FINAL ACTION ON THE ADEQUACY OF THE 1999 RATE OF PROGRESS SIP AND THE 2000 ATTAINMENT DEMONSTRATION SIPS FOR THE DFW NONATTAINMENT AREA

[42 U.S.C. § 7410(k)(2)]

47.     Paragraphs 1-46 are incorporated herein by reference.

48.     Following the 1998 reclassification of the DFW nonattainment area to "serious," the state of Texas began preparation of revised SIPs to meet new requirements.  66 Fed. Reg. 4767 (Jan. 18, 2001).  "As a result of the reclassification, the state was required to submit both an attainment demonstration SIP with an attainment date of November 15, 1999; and a Rate of Progress SIP covering the years from November 15 1996 to November 15, 1999."  Id.  The SIPs that the state submitted in March 1999 were so patently inadequate that EPA deemed them incomplete and began a process of imposing punitive sanctions against the state.  Id.  Seven months later, on October 25, 1999, Texas submitted a revised Rate of Progress SIP that EPA deemed complete on December 16, 1999.  The revised attainment demonstration SIP was submitted on April 25, 2000 and found complete on June 23, 2000, suspending some, but not all of the sanctions processes.  Id.

49.     EPA is required by the Act to formally give or withhold its approval of a submitted SIP no later than 12 months following EPA's determination of SIP completeness.  42

U.S.C. § 7410(k)(2). Thus EPA had a non-discretionary duty to act on the DFW Rate of Progress SIP no later than December 16, 2000 and to act on the DFW attainment demonstration SIP no later than June 23, 2001.

50.    On January 18, 2001 EPA proposed, *inter alia*, to approve the Rate of Progress SIP and the attainment demonstration SIP for the DFW nonattainment area. 66 Fed. Reg. 4756 (Jan. 18, 2001).

51.    To date, the Administrator has not taken final action to approve, disapprove, or otherwise act pursuant to 42 U.S.C. § 7410(k)(2) of the CAA on the DFW nonattainment area SIP revision. The Administrator has not published a final Federal Register Notice containing his final action on the DFW nonattainment area SIP revision.

52.    The requirements set forth in paragraphs 49-51 above are non-discretionary duties of the Administrator under the Act.

53.    The 2000 DFW Rate of Progress and attainment demonstration SIPs are in fact inadequate to attain the ozone NAAQS by November 15, 1999, or by 2005. The state of Texas must immediately commence an accelerated planning and implementation process to adopt and submit revised Rate of Progress and attainment demonstration SIPs for the DFW nonattainment area. If this process is furthered delayed, the DFW nonattainment area may fail to attain the one hour national ambient air quality standard for ozone by the 2005 attainment deadline for "severe" areas. In that event, the Act mandates the imposition of fees upon air pollution emitted from major stationary sources above a certain baseline. 42 U.S.C. §§ 7511a(d)(3); 7511d.

54.    For all the foregoing reasons, the Administrator is in violation of his non-discretionary duties as set forth in 42 U.S.C. § 7410(k)(3). The Administrator's violation of such

non-discretionary duties is ongoing.  On information and belief, plaintiffs allege that such

violation will continue unless enjoined by order of this court.

55.    Plaintiffs and the public are suffering and will suffer irreparable harm because of

the Administrator's failure to timely perform his non-discretionary duties.  Each day of EPA delay

forestalls the schedule for adoption of additional controls to protect plaintiffs and the public from

the serious health impacts of ozone pollution.  Each day of EPA delay undermines Congress'

specific schedule for additional steps to meet the federal health standard for ozone.

56.    For all of the foregoing reasons, plaintiffs are entitled to an order of this court

directing the Administrator to immediately act upon the Rate of Progress and attainment

demonstration SIPs for the DFW nonattainment area, to promptly publish a final Federal Register

Notice containing such final action, and to identify in such notice any requirements for submittal

of a revised SIP for the DFW nonattainment area within 12 months that fulfils all applicable SIP

requirements of the Clean Air Act.


<u>RELIEF REQUESTED</u>

57.    WHEREFORE, plaintiffs respectfully request that the Court:

A. Declare that the Administrator is in violation of his non-discretionary duties

under 42 U.S.C. §§ 7509(c) and 7511(b)(2) for the reasons set forth above;

B. Issue a preliminary and permanent injunction requiring the Administrator to,

within 30 days:  i) make a formal, final determination of whether the DFW nonattainment area

attained the one hour ozone standard as of November 15, 1999; ii) publish in the Federal Register

final notice containing such determination;  and iii) identify in such Federal Register notice the

reclassification of the DFW nonattainment area to "severe";

C.  Issue a preliminary and permanent injunction requiring the Administrator to, within 30 days:  i) make a formal, final determination of approval or disapproval of the 1999 Rate of Progress and 2000 attainment demonstration SIPs for the DFW nonattainment area; ii) publish in the Federal Register final notice containing such determinations;  and iii) identify in such Federal Register notice any applicable further SIP revisions and submittal requirements for the DFW nonattainment area;

D.  Issue an order to show cause setting a hearing at the earliest possible date on plaintiffs' request for a preliminary injunction, and order that the hearing on plaintiffs' request for a permanent injunction be advanced and consolidated with the hearing on the preliminary injunction.

E.  Retain jurisdiction of this matter for purposes of enforcing and effectuating the court's orders;

F.  Grant plaintiffs their reasonable costs of litigation, including their attorney's and expert witness fees; and,

G.  Grant such further relief as the court deems just and proper.


Dated: October 1, 2004                LAW OFFICE OF MARC CHYTILO

                                      By: _____

                                      Marc Chytilo
                                      Telephone: (805) 682-0585
                                      Fax:  (805) 682-2379

                                      Attorney for Plaintiffs
                                      BLUE SKIES ALLIANCE,
                                      DOWNWINDERS AT RISK,
                                      PUBLIC CITIZEN and SIERRA CLUB